IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD F. WEINBERG, ILYNE R. WEINBERG, <br><br> Plaintiff(s) <br><br> v. <br><br> FIRST FRANKLIN FINANCIAL CORP., FLAGSHIP MORTGAGE CORP. <br><br> Defendant(s) | No. 08 C 663 <br><br> Judge: Holderman <br> Magistrate Judge Keys |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

NOW COMES, defendant, FLAGSHIP MORTGAGE CORP., by and through its attorneys, JOHN M. HYNES, PAIGE NEEL & CLAUSEN MILLER, P.C. and for its reply brief in support of its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) states as follows:

### INTRODUCTION

Plaintiffs' circuitous response brief fails to adequately address defendant's arguments that plaintiffs have not properly pleaded their Illinois Consumer Fraud Act and Fraud in the Inducement claims. At certain points in their brief plaintiffs completely misconstrue defendant's arguments, at other points plaintiffs address, in some depth, legal arguments that were not even raised in defendant's motion. Plaintiffs even rely on case law that bolsters defendant's position. Regardless, plaintiffs avoid directly confronting the merits of defendant's motion, favoring, instead, oblique argument, occasional references to irrelevant or distinguishable legal authority and a protracted recitation of the allegations in the complaint without explaining how said allegations (1) provide the particularity required under Federal Rule of Civil Procedure 9(b) for claims of fraud; (2) raise an inference of justifiable reliance in light of

1182865.1

the longstanding legal duty to review a contract and know the terms of said contract and (3) show damages proximately caused by defendants' alleged wrongful conduct. These contentions shall be addressed in turn.

## I. PLAINTIFFS HAVE FAILED TO PLEAD THE FRAUD CLAIMS WITH PARTICULARITY

### A. Illinois Consumer Fraud Act ("ICFA") Claim

Initially, it is critical to note that the plaintiffs fail to address defendant's argument regarding the complaint's lumping defendants together in the counts as well as factual allegations. In cases involving multiple defendants, "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Balabanos v. North Am. Inv. Group, Ltd.* 708 F.Supp. 2d 1488, 1493 (N.D. Ill. 1988); *See also Design, Inc. v. Synthetic Diamond Technology, Inc*, 674 F.Supp. 1564, 1569 (N.D. Ill. 1987) (discussing the prohibition on lumping defendants together). Here, Plaintiffs have lumped together the defendants, and the allegations fail to inform Flagship Mortgage of the specific fraudulent acts against it and what role it played in the alleged fraudulent scheme. Further, such lumping makes it difficult to ensure that plaintiffs have pleaded *each* element of the cause of action against *each* individual defendants for *each* of the alleged fraudulent acts. *Siegel v. Shell Oil Company*, 480 F. Supp.2d 1034 (N.D. Ill. 2007) (finding that a complaint must inform each defendant of the nature of his alleged participation in the fraud); *see also, Shelton v. Schneider*, 2006 U.S. Dist. LEXIS 1237, 05 C 5955 (N.D. Ill. January 4, 2006, Hon J. Moran) (finding in the context of an intentional inflection of emotional distress claim that each element must be alleged for each of the eleven defendants).

Regarding the ICFA arguments, contrary to plaintiffs' statement on page four of its response brief, defendant does not contend that plaintiffs are required to plead justifiable

reliance. Rather, defendant argues that plaintiffs have not pleaded the ICFA claim with sufficient particularity because the ICFA count is devoid of many details concerning some of the alleged misrepresentations, including the identity of the persons who made the various alleged misrepresentations and the means and methods by which certain misrepresentations were made.

Plaintiffs argue that they have pleaded each element of an ICFA claim and then proceed to identify the paragraphs that show (1) a deceptive trade or practice (¶¶ 14-23 and 25-30) and (2) defendants' intent that plaintiffs rely on the deception (¶¶ 22, 23 and 33). Plaintiffs recite back all of the allegations of their complaint and then assert, in a conclusory fashion, that they have pleaded all elements of the claim including the who, what, where, when and why. Plaint. Resp. pp. 6-8. What plaintiffs neglect to recognize is that their complaint, brought against two entities and packed with multiple allegations of fraudulent conduct and misrepresentations (including the 15 paragraphs referenced above by plaintiffs), fails to identify the specifics of each act of fraud.

For instance, plaintiffs allege that "Flagship Mortgage, by its agents or representatives, advised plaintiffs that it could arrange for a refinancing of plaintiffs' mortgage with GMAC Bank to a new mortgage with more favorable terms that would assist Plaintiffs with their difficult financial situation." (Compl. at ¶¶ 14, 20.) Plaintiffs further allege that they received $880.84 in cash at closing, "which was substantially less than what was told to them by Flagship Mortgage as agent for First Franklin." (Compl. at ¶ 25.) In both instances, plaintiffs fail to state who made this alleged misrepresentation, the place this alleged misrepresentation was made, the method by which this misrepresentation was communicated and, in the case of the former, what the "more favorable terms" entailed. In addition, paragraph 39 fails to detail the specifics of how the loan package lacked economic benefit, how there were deficiencies in

underwriting, and facts specific as to how it was defendants' pattern and practice to acquire such loans. Likewise, paragraphs 40 and 42 of plaintiffs' complaint allege that representations regarding interest rates and terms of the loan were made, but fails to set forth the nature of those rates and terms. Such lack of specificity is especially problematic given the fact that plaintiffs have brought suit against two defendants and presumably could have communicated with both defendants. In fact, the only specific person identified in the complaint and plaintiffs' response is Mitch Horwitz who is referenced twice in the complaint (¶¶ 15 and 16) and only in the context of the Loan Application. [Notably, plaintiffs' response brief erroneously states that Mr. Horwitz is referenced in paragraph 33 of the complaint.] However, plaintiffs' complaint appears to allege that multiple misrepresentations were made throughout the mortgage process including the closing, but, with exception to the two aforementioned paragraphs, fails to identify the individuals involved.

Plaintiffs have failed to plead their consumer fraud claim with the specificity required under the federal rules of civil procedure. *U.S. v. All Meat and Poultry Products Stored at Lagrou Cold Storage*, 470 F.Supp.2d 823, 830 (N.D. Ill. 2007) (dismissing consumer fraud claim for lack of specificity). Plaintiffs have pleaded multiple, ill-defined misrepresentations. For example, in paragraph 37 plaintiffs plead that defendant "misrepresented material information regarding the transaction *including but not limited to* promising the plaintiffs mortgage terms" (emphasis added). Such an allegation fails for two reasons: (1) plaintiffs fail to identify with specificity the "mortgage terms" and (2) the expansive nature of the term "including but not limited to" which is incongruous with FRCP 9(b)'s pleading with particularity requirement. Moreover, according to the complaint, defendants and various agents made alleged misrepresentations at various times over the course of the mortgage process involving numerous

1182865.1

4

aspects of the mortgage transaction, including the type mortgage plaintiffs sought to secure, the benefits/payouts they were promised, and the personal information attained to complete the numerous forms.

### B.   Fraud in the Inducement

For similar reasons as discussed above, plaintiff's Count for Fraud in the Inducement fails as it lacks the required specificity. Notably plaintiffs' response brief fails to discuss the defendant's argument that the fraud in the inducement was pleaded with particularity. Section II deals almost exclusively with the ICFA claim until the last paragraph where plaintiff makes the unsupported statement that the defendants have sufficient particulars "to give them a meaningful opportunity to respond to Count I and Count II." This is an odd statement considering the prior argument dealt almost exclusively with the ICFA claim going through it element by element.

Plaintiff does deal with the fraud claim in (Section III A) in an argument that is not only conclusory but, for the most part, unnecessary. Plaintiffs appear to manufacture an argument not even raised in defendant's motion. Plaintiffs rely upon *Martinez v. Freedom Mortg. Team, Inc.* 27 F. Supp.2d 827, 837 (N.D. Ill. 2007) for the proposition that misrepresentations made during the loan application process including inflating an applicant's income and appraised home value are material. While the *Martinez* case certainly lends credence to such a proposition, reliance on it is unnecessary as defendant's motion never attacks the element of materiality. Rather, it is premised on the fact that plaintiffs have identified numerous alleged misrepresentations over the course of the mortgage process (presumably made by multiple persons) and have failed to plead each alleged fraudulent act with specificity, an especially troubling aspect in light of the fact that there are two party defendants.  *See, Siegel v. Shell Oil Company*, 480 F. Supp.2d 1034 (N.D. Ill. 2007) (dismissing certain averments of fraud that failed to meet the heightened pleading

1182865.1

standard and noting that a complaint must inform each defendant of the nature of his alleged participation in the fraud). To avoid needless repetition, defendant refers back to the numerous examples of failure to plead with particularity provided above and in its original motion.

## II. PLAINTIFFS CANNOT SHOW THAT THEIR ALLEGED RELIANCE ON DEFENDANT'S STATEMENTS WAS JUSTIFIED

Plaintiffs' response to defendant's argument that, as a matter of law, plaintiffs have failed to plead justifiable reliance is lacking. The crux of defendant's argument is that, as alleged on the face of plaintiffs' complaint at law, plaintiffs were given the opportunity to review the contracts into which they eventually entered thus precluding them from claiming fraud as "[a party] may not enter into a transaction with [its] eyes closed to available information and then charge that [it] has been deceived by another." *Adler v. William Blair & Co.*, 271 Ill.App.3d 117, 125-26, 648 N.E.2d 226, 232 (1st Dist. 1995).

Rather than tackle this argument head on, plaintiffs' response is somewhat circumspect. Plaintiffs offer an unnecessary recitation of the facts of the complaint dealing with the alleged material misrepresentations defendants knowingly made. See Plaint. Resp. Section III A, pp. 9-10. Plaintiffs continue with their laundry list of alleged misrepresentations in Section III B. However, such recitations serve as mere distractions and are irrelevant to the analysis of the substantive issue of justifiable reliance.

Eventually near the end of Section III B Plaintiffs provide a cursory analysis of the issue of justifiable reliance. Plaintiffs offer two cases to support their assertion that they have adequately pleaded justifiable reliance, *Firstar Bank v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029, 1045 (N.D. Ill. 2003) and *Chicago Title and Trust v. First Arlington National Bank*, 73 Ill. Dec 626, 454 N.E.2d 723 (1st Dist. 1983). However, these cases, which involve entirely different factual contexts, are readily distinguishable for the simple fact that neither case

6

1182865.1

analyzes the issue of justifiable reliance in the context of a contracting party failing to exercise ordinary prudence in his or her review of the contract prior to agreeing to its terms.

The *Firstar Bank* case involves a somewhat complicated arrangement between the plaintiff bank and defendant dealership giving the bank the right to purchase motor vehicle retail installment sale contracts and lease contracts. 249 F. Supp.2d at 1032-1033. The dealership prepared drafts for purchases of both sales and lease contracts. *Id.* at 1033. Drafting irregularities occurred and the evidence showed that the dealership submitted multiple drafts to the bank and also made erroneous submissions. *Id.* These drafts were paid by defendant bank, who eventually brought suit against the plaintiff for common law fraud, among other claims. *Id.* at 1043. Defendant dealership argued that the plaintiff bank could not have justifiably relied upon its representations set forth in the drafts as the bank should have been able to identify the erroneously deposited drafts. *Id.* at 1045-46. The court found that given the specific nature of the transaction and the fact that plaintiff bank was in a passive position and unable to verify that the deposits were legitimate until a later date after the transaction, an issue of fact existed as to the fraud claim. *Id.*

The *Chicago Title* case involves a plaintiff trust company seeking restitution of an overpayment mistakenly made to defendants. 454 N.E.2d at 725. In *Chicago Title*, the plaintiff trust company entered into an agreement with defendants allowing the defendant contractor to obtain progress payments as work was completed on a specific project. *Id.* at 726. The plaintiff relied upon the defendant developer's representation that a progress payment was due and approved the payment unaware that an additional mistaken payment had previously been made by plaintiff. *Id.* Upholding the trial court's finding of liability on the fraud count, the court deferred to the credibility findings made by the trial court and found that the application with

defendant's false representation appeared regular on its face and would not have given the plaintiff notice of suspicious circumstances. *Id.* at 730.

Notably, the fraud perpetrated in the *Firstar* and *Chicago Title* cases does not involve a contract or agreement with fraudulent terms. Rather, the fraud was perpetrated through paperwork produced over various business transactions, not the initial contract between the parties. The *Firstar* and *Chicago Title* courts found that, given the specific procedures in place between the parties, the plaintiffs could not have been aware of the fraudulent activity as the various documentation/paperwork was valid on its face. Contrary to *Firstar* and *Chicago Title*, the case at hand deals with a single allegedly fraudulent mortgage agreement into which the plaintiffs entered after an opportunity to review said agreement. Unlike the plaintiffs in *Firstar* and *Chicago Title*, had plaintiffs here utilized their opportunity to review the contract, as they were required to do under law, they would have been made aware of the alleged deficiencies contained on the face of the loan documents as cited in the complaint. Compl. ¶¶ 17, 18, 22, 23. As such, these cases provide little guidance on the issue of justifiable reliance.

It is understandable that plaintiffs would have a difficult time finding case law that contravenes the "universally recognized," "longstanding" principle that public policy imposes a clear duty on contracting parties to understand the obligations they are assuming. See, *Bayer Cropscience, Inc. v. Limagrain Genetics Corp. Inc.*, 2004 U.S. Dist. LEXIS 25070, 04 C5829 (N.D. Ill. Hon. Judge John Darrah, December 8, 2004); *FTC v. IFC Credit Corp.*, 2008 U.S. Dist. LEXIS 29292 at *55, 07 C 3155 (N.D. Ill, Hon. J. Cole, April 9, 2008). An overwhelming amount of case law from Illinois courts and the Seventh Circuit provides explicit authority for this principle as well as its logical extension precluding parties from claiming justifiable reliance on representations contrary to the written contract so long as there was a full opportunity to read

it. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 394 (7th Cir. 2003); *Carr v. CIGNA Securities, Inc.*, 95 F.3d 544, 547 (7th Cir. 1996); *IFC Credit Corp.* [*supra*]; *Belleville National Bank v. Rose*, 119 Ill. App. 3d 56 (5th Dist. 1983). Contract law and public policy are simply adverse to a contracting party's claims of incomprehension as well as the "I didn't read it" defense. See, *Treiber & Staub, Inc. v. U.P.S., Inc.* 474 F.3d 379, 385 (7th Cir. 2007); *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 667 (7th Cir. 2003), *respectively*.

In fact, the court in *Carr* stated the following:

> "If a literate and competent adult is given a document that, in readable and comprehensive prose, says X...and the person who hands it to him tells him orally not X...our literate and competent adult cannot maintain an action for fraud against the issuer of the document." 95 F.3d at 547.

The *Carr* court also cites to *Leon v. Max E. Miller and Son, Inc.*, 23 Ill. App. 3d 694 (Ill. App. Ct. 1974):

> One is under a duty to learn, or know the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement...And the law is that a party who signs an instrument relying on representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by the misrepresentations.

Here, as previously discussed and similar to the above cited cases, plaintiffs never allege that they did not have an opportunity to read the loan documents at the closing. In fact, their own complaint sets forth quite the contrary--that all of these alleged misrepresentations were contained in the loan documents, which could have been discovered. Plaintiffs specifically admit that they signed the closing documents but did not adequately review each document (Compl. at ¶ 28.) Plaintiff's complaint sets forth that the "Loan Application that plaintiffs *signed* inflated their income above that which they reported to Flagship Mortgage...which fact Plaintiffs did not realize until after *they were able to review* the documents later." (Compl. at ¶ 17.) Essentially,

9

on the face of their complaint, plaintiffs admit that they were provided with documents, which they eventually signed together on the date of the closing, indicating the following: (1) the terms and conditions of the loans (Compl. at ¶¶ 23 and 26) and (2) the personal information that was used to secure the loans (Compl. ¶¶ 17 and 18).

Plaintiffs attempt to circumvent their duty to review the contractual agreement into which they entered arguing they were prevented from reading the loan documentation due to Ed Weinberg's alleged health problems, the plaintiffs' financial difficulty and the fact that they were "rushed through signing the documents." Plaint. Resp. p. 10. Such an argument implies that plaintiffs were under some type economic duress or even incapacitated. This argument cannot be sustained on the face of the complaint as plaintiffs' neither allege that Ed Weinberg's physical condition or mental health impacted his ability to review and comprehend the terms of the contract into which he entered, nor have they plead a count for economic duress in their complaint. *Thompson v. Nachtrieb*, 888 F.3d 1202 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Catchings v. City of Chicago*, 2005 U.S. Dist. LEXIS 8277, 04 C 6110 (N.D. Ill. April 26, 2005) ("It is axiomatic that a plaintiff cannot raise a new claim for the first time in his response brief").

Even assuming raising such an argument is appropriate, plaintiffs have not pleaded sufficient allegations for mental incapacity. *See, In re Estate of Gruske,* 179 Ill. App.3d 675 (3rd Dist. 1989) (discussing requirement for mental incapacity to invalidate a contract). Moreover, according to the complaint, it was not just Ed Weinberg who signed the documentation, but also his wife/co-plaintiff, Ilyne Weinberg. Reviewing the complaint and the plaintiffs' response, it does not appear that Ilyne suffered from any physical ailment, much less one that would effect her ability to read the terms of the agreement or documentation marked "Adjustable Rate Note."

1182865.1

Compl. ¶¶ 22. 23 and 27. Further, there are no allegations in the complaint suggesting that all defendants were in possession of this medical information or even used this information to exert any pressure or undue influence. In fact it is unclear to whom and to what extent plaintiffs disclosed this information. See Compl. ¶ 14. Therefore, a mental incapacity argument is not tenable.

Regarding the implication of economic duress (again despite pleading no separate count), such a claim is not sustainable under the facts alleged in plaintiffs' complaint as there are no allegations suggesting that defendant caused the financial duress that led plaintiffs to enter into the contract. *Golden v. McDermott, Will & Emery*, 299 Ill. App. 3d 982, 992 (1st Dist. 1998) (finding that an economic duress claim is based on the acts or conduct of the opposite party and not merely the necessities of the purported victim thus the defendant must be in some way responsible for the economic difficulty that leads plaintiff to enter into an agreement); *See, Rissman v. Rissman*, 213 F. 3d 381, 386 (7th Cir. 2000) citing *Kaplan v. Kaplan*, 25 Ill.2d 181, 185 (1962) (finding that the dire circumstances in a duress claim must be such as to overbear the will of the plaintiff); *See also, Carr*, 95 F.3d at 547 (court refuses to consider an unsophisticated plaintiff's vulnerability as an excuse for duty to review a contract); *Castellano v. Wal-Mart Stores, Inc.*, 373 F.3d 817 (7th Cir. 2004) (noting that duress does not exist just because a party faces pressure due to his or her financial position especially when party has other options).

Here, not only does the complaint fail to explain how these hardships prevented plaintiffs from reviewing the agreement, but also, and more importantly, there are no allegations indicating that plaintiffs' precarious financial situation was caused by the defendants. As such, plaintiffs cannot rely on excuses of economic/financial duress to avoid their duty to review a contract. Rather, it was the plaintiffs' duty to protect themselves by reviewing the terms of the contract.

1182865.1

See, *Davis v. GN Mortgage Corporation*, 398 F. 3d 869 (7th Cir. 2005) (finding no justifiable reliance in mortgage context and noting that plaintiffs' preoccupation with certain contractual conditions, failure to obtain attorney and three day period to rescind contract under federal law all supported dismissal of claim).

Plaintiff's "rushed through signing" excuse shares a similar fate. See, *Luhr v. Fidelity Mortgage, Inc.*, 2006 U.S. Dist. LEXIS 82972, 06-3148 (C.D. Ill. Hon. J. Scott, November 14, 2006) (finding that plaintiff was subject to contractual provision signed in rushed circumstances including a quick closing where an attorney representing the lender was impatient for plaintiff to sign documents and would not allow her to read them); *Tammerello v. Ameriquest Mortgage Company*, 2006 U.S. Dist. LEXIS 71249, 05 C 0466 (N.D. Ill. Hon. J. Coar, September 29, 2006)(finding for statute of limitations purposes that the plaintiff should have been aware, through reasonable diligence, of the increased interest rate and defendant's fraud on the date of signing the mortgage despite plaintiff's contention that he was "rushed through" the process); *Tortoriello v. Gerald Nissan of North Aurora*, 2008 Ill. App. LEXIS 6, 317 Ill Dec. 583 (2nd Dist. 2008) (in upholding contract clause court does not consider plaintiff's claim of being rushed through the contract process and financial duress to sign contract to preserve credit).

Although not in the section of their response brief dealing with the justifiable reliance issue, plaintiffs rely, to their detriment, on the *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 847 (N.D. Ill. 2007). In *Martinez*, the plaintiff, a Hispanic Spanish-speaking male, applied for a loan to finance his purchase of a home. *Id.* at 832. Plaintiff contacted a mortgage broker and his dealings with this broker were conducted exclusively in Spanish. *Id.* During the application process, the plaintiff provided the mortgage broker with accurate information; however, the broker inserted false information into the loan application. *Id.* The mortgage

1182865.1

broker agreed on an inflated appraisal value of the plaintiff's home. *Id.* The mortgage broker also represented to the plaintiff that his monthly payment would decline. *Id.* The plaintiff's actual mortgage was an adjustable rate mortgage that would only increase in the future. *Id.* While all of plaintiff's dealings with the broker were conducted in Spanish, during the closing plaintiff signed a contract prepared solely in English with no accompanying Spanish translation or explanation. Plaintiff eventually brought suit alleging, among other claims, common law fraud. *Id.*

In its analysis of the justifiable reliance element of common law fraud, the court emphasized the following: (1) defendants made no showing that the loan terms were so onerous that the plaintiff was unreasonable in believing that he could meet them; (2) plaintiff could not know that he was unqualified to take on the loan; (3) the plaintiff was supplied with a contract that he was unable to read and (4) plaintiff's interpreter (the broker) spoke with "forked tongue" in providing the English to Spanish translation. *Martinez*, 527 F. Supp.2d at 837-38. Given the circumstances, the court refused to dismiss the case.

While the *Martinez* case demonstrates a factual scenario where a contracting party was excused from the ordinary duty to review a contract into which he entered, the obstacles faced by the *Martinez* plaintiff that prevented him from a full review of the contract were extreme. The *Martinez* plaintiff, unable to speak the language of the contract, was placed at a distinct disadvantage. Here, the plaintiffs have not pleaded sufficient allegations demonstrating that they were prevented from exercising their duty to use reasonable prudence to understand the contract into which they entered.

In light of the *Martinez* case and Illinois case law, plaintiffs alleged reasons for justifiable reliance are more equivalent to insufficient excuses. As a matter of law, plaintiffs' implication

of financial duress and/or incapacitation and being rushed do not excuse their duty to review the contracts into which they enter. The allegations in the complaint demonstrate that plaintiffs had the opportunity to ascertain the truth, but did not avail themselves of this opportunity. As such, as a matter of law, they cannot claim that they relied on the alleged representations of the defendants. Plaintiffs' fraud in the inducement count should he dismissed with prejudice.

### III. PLAINTIFFS' HAVE NOT PLEADED DAMAGES PROXIMATELY CAUSED BY THE ALLEGED FRAUD

In their response brief, plaintiffs cite to the *Martinez* case [*supra*] for support that they have pleaded damages. However, the *Martinez* case is distinguishable for the reasons previously discussed and for the fact that the plaintiff took on a mortgage obligation that exceeded the value of the property and "Martinez' injury is that he owes more on his home than it is worth". *Martinez*, 527 F.Supp.2d at 838. There are no allegations indicating that such a circumstance is present here.

Plaintiffs, for the reasons set out more fully in defendant's motion to dismiss, have failed to address the fact that their damages are speculative and that that they have not suffered damages to date *caused* by the alleged fraud.

### CONCLUSION

Plaintiffs' have failed to plead their claims for fraud with the requisite particularity required by Fed. R. Civ. P. 9(b). In addition, plaintiffs' claim for Fraud in the Inducement fails since there is no justifiable reliance. Further, plaintiffs have failed to state a claim pursuant to the ICFA and for Fraud in the Inducement since they have not alleged damages proximately caused by the fraud.

1182865.1

For all of the reasons detailed above, Defendant, Flagship Mortgage Corp. respectfully requests that its Motion to Dismiss be granted and that this Court enter and Order dismissing Plaintiffs' Complaint in its entirety with prejudice.

　　　　　　　　　　　　　　　　　　　　/s/ *Paige M. Neel*
　　　　　　　　　　　　　　　　　　　　PAIGE M. NEEL
　　　　　　　　　　　　　　　　　　　　CLAUSEN MILLER P.C.


JOHN M. HYNES
ARDC # 3125659
PAIGE M. NEEL
ARDC # 6279324
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 S. LaSalle Street
Chicago, IL 60603-1098
312.855.1010
Attorneys For Defendant, Flagship Mortgage Corp.

1182865.1

## NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 13th day of May, 2008, the foregoing **Defendant Flagship Mortgage Corp.'s Reply Brief in Support of its Motion to Dismiss Pursuant to 12(b)(6)** was electronically filed with the Clerk of the Court using CM/ECF system which sent notification of such filing to the parties who are registered participants with the System and hereby certify that copies were mailed to any non-CM/ECF participants:

/s/*Paige M. Neel*
Paige M. Neel

1182865.1