## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 663 | **DATE** | 8/8/2008 |
| **CASE TITLE** | Edward F. Weinberg & Ilyne R. Weinberg vs. First Franklin Financial Corp. & Flagship Mortgage Corp. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in the Statement section below, Defendant Flagship Mortgage Corp.'s Motion to Dismiss Pursuant to 12(b)(6) [18] is denied. Defendant Flagship Mortgage Corp. is directed to answer Plaintiffs' Complaint on or before August 29, 2008. Case is set for report on status at 9:00 a.m. on September 4, 2008.

■[ For further details see text below.]                                                                                    Notices mailed.

### STATEMENT

 This case concerns the refinancing of a mortgage loan on property owned by Plaintiffs Edward and Ilyne Weinberg. According to the Weinbergs, in December 2006 they telephoned Flagship Mortgage Corp., an agent of First Franklin Financial Corp., to inquire whether Flagship could help them refinance their mortgage loan. The existing loan had a fixed interest rate of 7.750 percent. The Weinbergs hoped that by refinancing the loan they could reduce their monthly payment and get some cash back at closing from the equity accrued in the property. The Flagship representative that the Weinbergs spoke with told them that Flagship could refinance the existing loan to a new loan with more favorable terms.

 In January 2007, the Weinbergs again spoke by telephone with a Flagship representative. On this occasion, Mitch Horwitz "interview[ed]" the Weinbergs and allegedly completed a Uniform Residential Loan Application on behalf of the Weinbergs. The loan application stated that the Weinbergs were applying for a conventional mortgage in the amount of $416,000 at a fixed interest rate of 6.850 percent and listed the property's market value as $520,000. The loan application also listed Ilyne's income as $7,500 per month (or $90,000 per year) and Edward's income as $15,000 per month. In fact, the Weinbergs say, Ilyne's gross annual income at the time was approximately $40,000, Edward's income was "several thousands of dollars" less than that reported on the loan application, and the property's appraised value was $450,000. At some point, the Weinbergs signed the loan application prepared by Horwitz but assert in their complaint that they did not realize Flagship had "fabricated the amount of income . . . until after they were able to review the documents later."

 At the closing, the Weinbergs were "rushed through signing the documents and did not have time to adequately review each document." The Weinbergs explained that they discovered only after closing, when they were able to review the loan documents, that they were sold an adjustable rate mortgage, with an initial rate of 6.850 percent but with the potential to adjust upward to 12.850 percent. The Weinbergs did not have

legal counsel during the refinancing process and had no opportunity to review the documents prior to closing. The Weinbergs maintain that they "did not have any reason to suspect that the documents which they would be signing at closing would differ in any way from the previous estimates they ha[d] been provided by Flagship Mortgage."

In their two-count complaint against Flagship and its principal First Franklin, the Weinbergs allege a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and a claim for fraud in the inducement. Flagship challenges the Weinbergs' pleadings on three bases.

Flagship first argues that the Weinbergs' complaint should be dismissed because the Weinbergs have failed to plead their claims for fraud with particularity as required by Federal Rule of Civil Procedure 9(b). The Federal Rules of Civil Procedure provide that a complaint generally need contain no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That is, the complaint must give each defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). A plaintiff alleging a claim of fraud or misrepresentation, however, must plead with particularity the who, what, where, and when of the alleged fraud or misrepresentation. Fed. R. Civ. P. 9(b); *see Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 749-50 (7th Cir. 2005).

In this case, the Weinbergs pleaded with sufficient specificity the who, what, where, and when of the alleged misrepresentations made by Flagship's representatives to the Weinbergs. In particular, the Weinbergs allege that both named and unnamed representatives of Flagship misrepresented information to them throughout the refinancing process. For instance, the Weinbergs allege that Mitch Horwitz inflated the Weinbergs' income and property value on the loan application he prepared on their behalf and that an unidentified representative assured the Weinbergs that the terms of their new loan would be more favorable than the terms of their existing loan. Flagship's representatives made these misrepresentations by phone and in writing. And the misrepresentations began in December 2006 and continued through the closing of the Weinbergs' loan. Although additional information may come to light during discovery, such as the identity of the Flagship representatives the Weinbergs spoke with other than Mitch Horwitz and the content of the estimates provided by Flagship to the Weinbergs, the Weinbergs' complaint contains sufficient information to put Flagship on notice of the claims brought against it as well as to satisfy the heightened pleading standard of Rule 9(b).

Flagship next argues that the Weinbergs have pleaded themselves out of court on their fraud in the inducement claim because, as a matter of law, the Weinbergs could not justifiably rely on any alleged oral misrepresentations that contradicted the writings contained in the documents they signed. In order to state a claim for fraud under Illinois law, the Weinbergs needed to allege that: (1) Flagship made a false statement of material fact; (2) Flagship knew that the statement was false; (3) Flagship made the statement intending to induce the Weinbergs to act; (4) the Weinbergs relied on the truth of the statement; and (5) the Weinbergs suffered injury as a result of their reliance on the statement. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996)). In addition, the Weinbergs' reliance on the false statement must have been justified. *See Cozzi Iron & Metal, Inc.*, 250 F.3d at 574 (citing *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 499 N.E.2d 1319, 1323 (Ill. 1986)).

Reliance is ordinarily a question of fact, but a court may determine reliance as a matter of law when no trier of fact could find that it was reasonable for the party to rely on the alleged false statements. *Cozzi Iron & Metal, Inc.,* 250 F.3d at 574 (citing *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692

N.E.2d 812, 819 (Ill. App. Ct. 1998)). It generally is not reasonable for a party to enter into a transaction "with its eyes closed to available information and then charge that it has been deceived by another." *Cozzi Iron & Metal, Inc.,* 250 F.3d at 574 (quoting *Adler v. William Blair & Co.*, 648 N.E.2d 226, 232 (Ill. App. Ct. 1995)). Consequently, a party's claim of fraudulent inducement will be defeated if "the complaining party could have discovered the fraud by reading the contract and had the opportunity to do so." *Cozzi Iron & Metal, Inc.,* 250 F.3d at 574-75 (citations omitted).

The Weinbergs admit that they signed the application prepared by Mitch Horwitz and the loan documents presented to them at closing. The Weinbergs maintain, however, that they did not receive the loan documents prior to closing, were rushed through signing the documents at closing, and had an opportunity to review the documents only after closing. The Weinbergs also assert that they had no opportunity to review the loan application before signing it. Thus, taking the allegations of the Weinbergs' complaint as true and drawing all reasonable inferences in their favor, as the court must do at this stage of the litigation, *see Sprint Spectrum L.P. v. City of Carmel,* 361 F.3d 998, 1001 (7th Cir. 2004), the court cannot conclude at this time that the Weinbergs' reliance on Flagship's statements was unreasonable as a matter of law because, even though the Weinbergs might have discovered that the terms of the contract they signed were different from the terms represented by Flagship, the Weinbergs had no opportunity to read the loan documents until after the deal was done. *See Los Amigos Supermarket, Inc. v. Metro. Bank & Tr. Co.,* 713 N.E.2d 686, 695 (Ill. App. Ct. 1999) (explaining that a plaintiff may "justifiably rely where the defendant has created a false sense of security or blocked further inquiry, provided that the facts were not such as to put a reasonable person on inquiry.").

Finally, Flagship argues that the Weinbergs' complaint should be dismissed because the Weinbergs have failed to allege damages resulting from Flagship's alleged misrepresentations. To support their argument, Flagship focuses on what it characterizes as the Weinbergs' failure to have incurred any damages to date:

> [P]laintiffs admit in their complaint that the loan that they obtained had not yet adjusted, as the interest rate was to adjust in the future, on February 1, 2009. In addition plaintiffs do not allege that they are not currently making their payments, or that they have failed to make payments, but rather, that in the future, on February 1, 2009, they were *highly unlikely* to make their payments.

(Def.'s Mem. in Supp. Mot. to Dismiss at 13-14 (emphasis in original).) Judge Shadur of this court recently explained, however, that:

> Inducing a borrower to agree to a mortgage after both the terms of the mortgage and his qualification for the loan have been thus misrepresented causes injury to the borrower: [Plaintiff] is stuck in a loan that he did not want and may not be able to pay.

*Martinez v. Freedom Mortgage Team, Inc.*, 527 F. Supp. 2d 827, 838 (N.D. Ill. 2007). Accordingly, the Weinberg's have pleaded a injury sufficient to survive Flagship's motion to dismiss.

For the foregoing reasons, Flagship Mortgage Corp.'s Motion to Dismiss Pursuant to 12(b)(6) [18] is denied.

Courtroom Deputy Initials: